WICKER, Judge.
This appeal arises from a suit filed on behalf of plaintiff/appellant, Ruby Mae Garner (Garner) against defendant/appel-lee, Schwegmann Giant Super Markets, Inc. (Schwegmann) for damages allegedly resulting from a fall on a slippery floor. Trial proceeded on the issue of liability only. The trial judge dismissed Garner’s claim. Garner now appeals. We affirm.
At trial Garner testified that she fell when she went grocery shopping at a Schwegmann’s store in the company of her daughter, Diana Garner Carey and her daughter’s husband, Roosevelt Carey. These three individuals’ testimony set forth that it had been raining that morning. Garner stated when they arrived at the store the rain had stopped but the ground was wet. They entered on the bakery area side of the store. All three stated Garner fell inside the store and that it took time for someone to come to her assistance.
They testified Mr. and Mrs. Carey helped Garner to her feet. Although the Careys did not witness the fall they did notice afterwards tracks or streaks of water on the floor in the area Garner fell. Garner stated after she fell she noticed “the floor was real real slippery and wet streaks of water.” She stated she fell in front of the bakery. Her right side hit the floor. She noticed her right side was damp when she arose.
The floor was described as “shiny”, “beautiful” and “clean” by Garner. She further stated when she fell “there wa[s] nothing there on the floor.”
Mr. Carey described the floor as follows: clean from being like maybe someone must have buffed the floor and shined it you know that’s the way it looked like it was buffed and cleaned.
Garner, Mr. Carey and Mrs. Carey stated there was no mat or caution sign provided.
Mr. Carey stated it was approximately 15 or 20 minutes after they called when someone finally came to assist them.
All three individuals were taken to an office for the completion of an accident report. Garner admitted signing the report but denied reading it. Her daughter stated she “assumed” her mother read it.
The form provides a statement, "I have read the above report and it is true and correct.” It is signed by Garner and dated December 7, 1987. The time of the accident is stated to be 10:30 a.m. The “customer’s description of the injury” reads, “Customer stated that she entered store and slipped, hurting right leg from knee to hip.” The “customer description of accident” reads, “customer stated that upon entering store, she slipped and fell. She stated that perhaps her wooden soles and heels and the wax on floor caused her to slip. Customer stated that her shoes were wet due to the rain.” Garner denied making that statement.
Garner’s deposition taken February 9, 1989 was introduced into evidence. She stated then, “When I walked in the store, I fell. I don’t know what happened.” She stated she wore boots “with a little, small wooden heel.” The heels were approximately an inch and a half high. At trial she stated she wore flat shoes.
The following colloquy occurred in her deposition:
Q. Tell me, first of all, what it was that, in your view, in your way of thinking, caused you to fall.
A. Well, I am going to be honest and tell you the truth. I don’t know. I really don’t know.
She also stated she saw no wax on the floor.
At trial she was confronted with her earlier statement that she didn’t know what caused her to fall. She stated at trial, “That’s what I said. I don’t know. I don’t know what made me fall. The floor was wet.”
Jerome James Long testified he was floor supervisor on the date of the accident. Upon hearing the notification of an accident, he immediately went to Garner’s location. The location was approximately 25 to 30 feet from him. He helped her up. She *340 fell approximately 15 feet from the entrance. He stated, “[t]here was no residue of any kind on the floor.” He did not touch the floor but could see nothing there. He explained the floor was “pretty shiny” making wetness apparent “by looking at it.”
He further testified he did not notice any water tracked in by customers on the floor area where the accident occurred. He stated there was a mat outside the door and carpeting on the outside of the door as well. He felt she slipped because of her shoes.
Robert Armington, the plain clothes security officer at the time of the accident, testified he investigated the incident. He responded to a call for assistance within three to four minutes after she fell. He saw no debris on the floor. He did not notice any wetness or dampness on the shiny floor. There was no water nor marks of any kind on her clothing.
She wore a “boot type of shoe.” He believed the soles were made of wood. They went to the security office where he could make his accident report. He identified the report in evidence. He stated the information came from Garner. The customer is “guaranteed” the opportunity to read what he has taken down as the customer’s statement. Garner approved what was written.
Sarah Harris testified she was Schweg-mann’s porterette on the date of the accident. Her responsibility was to clean the floors. She described her clean-up procedures. Her log of that day was admitted into evidence. The log indicates from 7:30 a.m. to 8:05 a.m. she was at the door of the store. It also indicates she swept the bakery area at 10:39 a.m. She was the only porterette for that area. She admitted not doing anything in the bakery area until 10:39 a.m., after the accident. She heard of the accident and went to check the area. There was no debris nor water on the floor. She did not recall whether the floor was wet or dry.
She stated it was Schwegmann’s policy when it rained for her to remain at the door mopping.
Garner has appealed the adverse judgment specifying the following errors:
1. The trial court committed reversible error in failing to find that there was water or dampness on the floor which caused petitioner to fall, and
2. The trial court committed reversible error in failing to find defendant negligent herein and liable unto petitioner for her damages.
The testimony at trial consisted of conflicting statements regarding whether the area in which Garner fell was wet or damp. The trial judge stated in his reasons for judgment the plaintiff must prove “he or she has slipped on a foreign object or substance on the floor where he or she was injured.” He further concluded Garner had “not carried her burden of proving that there was a foreign substance on the floor that caused her to slip and fall.”
La.R.S. 9:2800.6(B) provides:
In a suit for damages by a person who has suffered damages as the result of a hazardous condition while on the merchant’s premises, the person must prove that the accident was caused by a hazardous condition. The burden of proof then shifts to the merchant to prove that he acted in a reasonably prudent manner in exercising the duty of care he owed to the person to keep the premises free of any hazardous conditions.
The trial judge expressed sympathy for Garner but evidently made a credibility determination in attaching greater weight to the testimony of Long and Armington that there was no wafer or dampness on the floor where she fell.
Appellant argues it is obvious that the floor would be wet as a result of customers’ tracking in water. However, although Garner and the Careys testified there was no mat, Long stated there was a mat outside the door and carpeting as well. Long also stated Garner fell approximately 15 feet from the entrance. It was not error for the trial judge to evidently conclude the mat and carpeting prevented the accumulation of wetness in the store in the area in which she fell, which was some distance from the entrance.
*341 Appellant also argues Long and Arming-ton did not do enough to determine whether the floor was wet. It is uncontroverted the floor was clean and shiney from buffing. Although Long stated he did not touch the floor he explained the shiny nature of the floor made wetness apparent “by looking at it.”
Appellant attaches great significance to the statements made by Long and Arming-ton on cross-examination. Long was asked whether he could see “dampness on the floor that wasn’t visible.” He responded, “No sir.” The form of this question is confusing because the only answer would have to be “no” since dampness which was not visible could obviously not be seen. The trial judge correctly attached little weight to that statement.
Armington was asked during cross examination whether he could see “dampness on the floor that might have been caused by people with wet feet walking across that floor ... without feeling the floor?” He responded “probably not.” However, this question speculates that people tracked in water. The trial judge had sufficient evidence even without Armington’s testimony to conclude there was no wetness or dampness on the floor from others tracking it into the store to an area 15 feet away from the entrance.
It is apparent to this court the trial judge considered the entire record, including the inconsistencies in Garner’s testimony in her deposition, at trial, and her transcribed statements on the customer accident report. The trial judge had all of this evidence to consider and evidently concluded there was no dampness or wetness on the floor to cause Garner to fall.
We find no manifest error. See Rosell v. ESCO, 549 So.2d 840 (La.1989). Accordingly, for the reasons stated, the judgment in favor of Schwegmann dismissing Garner’s suit is affirmed.
AFFIRMED.